IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAIME ANTONIO MARTINEZ,<br>　　*Petitioner* | §<br>§<br>§ | |
| v. | §<br>§ | 1:22-CV-1297-LY-DH |
| WARDEN GERALDO ROSALEZ,<br>BASTROP FCI,<br>　　*Defendant* | §<br>§<br>§<br>§ | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:　THE HONORABLE LEE YEAKEL
　　　UNITED STATES DISTRICT JUDGE

Before the Court is Jamie Antonio Martinez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, Dkt. 1, and Amended Petition, Dkt. 8, as well as Rosalez's Motion to Dismiss, Dkt. 9. The District Court referred this Petition to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1, Appendix C of the Local Rules of the U.S. District Court for the Western District of Texas.

## I. Background

Martinez is currently imprisoned in Bastrop Federal Correctional Institution, located in Bastrop, Texas. Martinez's projected release date is April 20, 2026. Dkt. 9-1, at 13.

On February 10, 2006, Martinez was convicted of aggravated homicide by a court in Mexico and sentenced to serve 27 years, 1 month, 6 days in custody. *Id.* at 5-8, 14. Martinez was subsequently transferred to United States custody via treaty transfer, arriving to the Bureau of Prisons on March 10, 2008. *Id.* at 21. The United

1

States Parole Commission found that Martinez's "offense is most similar to First Degree Murder" and "set[] a release date after service of 168 months." *Id.* at 5.

On October 31, 2008, while in federal custody, Martinez was convicted by the United States District Court for the Southern District of Texas in two separate cases. First, Martinez was convicted for possession with intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. § 841, and he was sentenced to serve 87 months in custody. *United States v. Martinez*, No. 5:03-CR-01935-2, Dkt. 44 (S.D. Tex. Nov. 6, 2008) (sentencing Martinez to 9 years in custody); *Martinez*, No. 5:03-CR-01935-2, Dkt. 79 (reducing sentence to 87 months); Dkt. 9-1, at 18. Second, Martinez was also convicted for failure to appear, in violation of 18 U.S.C. § 3146, and sentenced to serve one year in custody. *United States v. Martinez*, No. 5:04-CR-00469-1, Dkt. 23 (S.D. Tex. Nov. 10, 2008); Dkt. 9-1, at 17. Both sentences were ordered to run consecutive to Martinez's existing aggravated murder sentence. *See* Judgment, Martinez, No. 5:03-CR-01935-2, Dkt. 44, at 2 (ordering that "the combined sentence imposed … begin on June 1, 2025, or whatever date the defendant has completed his sentence on the Treaty Transfer case from Mexico, Docket No. 1:08XX30442-179, whichever date comes sooner"); *Martinez*, No. 5:03-CR-0469-1, Dkt. 23, at 2 (same).

In his Original Petition, Dkt. 1, Martinez alleges that the Bureau of Prisons wrongfully disallowed him time credits to which he is entitled under the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (codified at 18 U.S.C.

§ 3632(d)(4)(A)(i)).[1] He complains that, after properly accounting for earned FSA time credits, he is currently being held beyond his projected release date. Martinez requests transfer to prerelease custody as relief.

On February 23, 2023, Martinez filed an "Amendment to 28 USC 2241 Petition for a Writ of Habeas Corpus." Dkt. 8. In his amended petition, Martinez complains that the BOP erroneously listed him as ineligible to earn time credits under the FSA based on his aggravated homicide conviction, which Martinez describes as a "prior foreign conviction" that he "completed … on April 22, 2019." *Id.* at 2. Martinez thus requests that the Court order the BOP to return his status to "eligible" and award his earned time credits under the FSA. *Id.* at 4.

Rosalez responds that Martinez is not entitled to earn FSA time credits because he is currently serving a sentence that renders him ineligible under the FSA, and even if he could earn time credits, he would not be eligible for prerelease custody.

## II. Analysis

A federal inmate may attack the manner in which his sentence is being carried out, or the prison authorities' determination of its duration, in a habeas petition pursuant to 28 U.S.C. § 2241, filed in the district where the prisoner is incarcerated. *See Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

---

[1] The First Step Act provides that eligible inmates can earn ten days of time credit for every thirty days of successful participation in "recidivism reduction programming or productive activities." First Step Act of 2018, Pub. L. No. 115-391, § 101, 132 Stat. 5194, 5198.

### A. *The First Step Act*

In December 2018, Congress passed the First Step Act. The FSA was implemented in phases. First, the Attorney General developed and released a "risk and needs assessment system." 18 U.S.C. § 3632(a). Second, the BOP was required to "implement and complete the initial intake risk and needs assessment for each prisoner." 18 U.S.C. § 3621(h)(1)(A). The FSA required the BOP to "determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a)(1). The BOP was also required to determine the type and amount of Evidence-Based Recidivism Reduction programming and Programming Activities appropriate for each prisoner. *Id.* § 3632(a)(3). The FSA then gave the BOP two years after completing the risk and needs assessment for each prisoner to "phase in" program implementation. *Id.* § 3621(h)(2)(A). During the two-year phase-in period, the FSA allowed the BOP to begin offering incentives, including time credits towards prerelease custody or supervised release, to prisoners who participated in EBRR programming and PAs. *Id.* §§ 3621(h)(4), 3632(d)(4)(A). In January 2022, the BOP published its final rule implementing FSA time credit calculation procedures. 28 C.F.R. §§ 523, 541.

The Bureau of Prisons subsequently adopted a computerized calculator that automatically calculates a prisoner's FSA time credits every 30 days:

> FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews,

4

> based on a completed 30-day period. No FTCs will post to the inmate's record if he/she has not accrued 30 days in earning status.

Program Statement No. 5410.01, U.S. Dep't of Just., Fed. Bureau of Prisons, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) (Nov. 18, 2022), at 11, https://www.bop.gov/policy/progstat/5410_01.pdf. Each prisoner was issued an FSA Time Credit Assessment using the BOP's automated calculation system. The Assessments reported the total programming days that each prisoner had accrued to date and the number of FSA time credits earned for prerelease custody or supervised release. In support of his arguments, Martinez submitted his FSA Time Credit Assessment, showing he had accrued FSA credits. Dkt. 1, at 31-2.

### B. *The BOP's Calculations of Martinez's Credits*

The BOP calculated Martinez's FSA time credits on October 7, 2022. *Id.* Martinez's assessment reported that he had accrued 1,207 programming days, resulting in 365 FSA time credits to supervised release and 235 credits to prerelease custody— either Home Confinement or transfer to a Residential Re-entry Center. *Id.* Martinez's assessment also notified him that 57 programming days were disallowed: two days between July 12, 2021, and July 14, 2021; and 55 days between July 23, 2021, and September 16, 2021. *Id.*

Rosalez asserts that Martinez was mistakenly listed as eligible to earn FSA time credits. Rosalez submits evidence that due to an error in Martinez's file, his Mexican conviction for aggravated homicide was not listed as a current sentence obligation. Dkt. 1, at 25-29. Rosalez maintains that the BOP mistakenly treated

Martinez's Mexican conviction as a prior, rather than current, offense and that its initial review of Martinez's eligibility to earn FSA time credits was limited to his drug offense. Dkt. 8-1, at 4; Dkt. 1, at 22. Rosalez further submits evidence that the BOP corrected this mistake, and the BOP system now includes Martinez's aggravated homicide conviction as one of his current sentence obligations. Dkt. 9-1, at 12-19. On February 10, 2023, the BOP updated Martinez's FSA Time Credit Assessment using its modified automated calculation tool. *Id.*, at 11. An email dated February 13, 2023, from a BOP Senior Attorney explained that:

> My understanding is that DSCC and Central Office determined the sentence comp from 2022 was in error. They should not have treated the Mexican sentence as a prior offense. This is because he was serving the Mexican sentence at the time his federal sentences were issued. Both federal sentences were ordered consecutive to his Mexican sentence. By law, these sentences must be treated as an aggregate sentence for administrative purposes. Murder is therefore one of his current offenses, which DSCC and Central Office determined is a disqualifying conviction, making him ineligible to earn Federal Time Credits.

Dkt. 8-1, at 4.

Rosalez argues that because Martinez is serving a sentence that renders him ineligible to earn time credits under the Act, Martinez's FSA status was properly changed to "ineligible" and "Apply FTC to Release: No." Dkt. 9-1, at 12-19; 18 U.S.C. § 3632(d)(4)(D). Accordingly, Martinez's updated FSA Time Credit Assessment reports that he has accrued zero programming days and earned zero FSA time credits are correct. Dkt. 9-1, at 11.

### C. *Eligibility for Time Credits Pursuant to the FSA*

Rosalez argues that Martinez is ineligible to earn FSA time credits because he is serving a sentence for a disqualifying offense. Rosalez asserts Martinez's updated FSA Time Credit Assessment properly reflects that his status is "ineligible" and reports zero earned time credits. Thus, Rosalez argues, Martinez's Petition should be dismissed.

The FSA allows prisoners to earn credits towards prerelease custody or supervised release for successfully participating in EBRR programming and PAs. 18 U.S.C. § 3632(d)(4). Not all prisoners, however, may earn FSA time credits. *Id.* § 3632(d)(4)(A) ("A prisoner, except for an ineligible prisoner under subparagraph (D), ... shall earn time credits ...."). A prisoner "is ineligible to receive time credits ... if the prisoner is serving a sentence for a conviction under" a list of enumerated offenses. *Id.* § 3632(d)(4)(D). Homicide is one such disqualifying offense; a prisoner serving a sentence for a conviction of "[a]ny section of chapter 51, relating to homicide" is ineligible to earn FSA time credits. *Id.* § 3632(d)(4)(D)(xxv).

Martinez was transferred to the United States to serve a sentence from a court in Mexico for aggravated homicide, which correlates to a disqualifying conviction under the FSA. Dkt. 9-1, at 5 (finding that Martinez's offense "is most similar to First Degree Murder"). "All laws of the United States, as appropriate, pertaining to prisoners ... shall be applicable to offenders transferred to the United States, unless a treaty or this chapter provides otherwise." 18 U.S.C. § 4103. Citizens of the United States may only be transferred to the United States to serve a foreign sentence if

certain requirements are met. Specifically, "[a]n offender may be transferred to ... the United States ... only if the offense for which the offender was sentenced satisfies the requirement of double criminality as defined in this chapter." *Id.* § 4100(b). "'[D]ouble criminality' means that ... the offense for which [an offender] has been sentenced is still an offense in the transferring country and is also an offense in the receiving country." *Id.* § 4101(a).

The United States Parole Commission is required to "determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense." *Id.* § 4106A(b)(1)(A). Here, the Parole Commission determined that Martinez's aggravated homicide offense "is most similar to First Degree Murder," and set a release date after service of 168 months. Dkt. 9-1, at 5. "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing ... is murder in the first degree." 18 U.S.C. § 1111. Because Martinez is serving a sentence for a conviction of murder, an offense under Chapter 51, he is ineligible to earn time credits under the First Step Act. 18 U.S.C. § 3632(d)(4)(D)(xxv).

Martinez argues that his Mexican murder conviction does not disqualify him under the applicable statute because he "completed the Mexican sentence on April 22, 2019, and he is currently serving the drug offense." Dkt. 8, at 3. Thus, Martinez

8

argues, his murder conviction is "a prior foreign conviction" that does not render him ineligible to earn time credits under the Act. *Id.*

The undersigned finds that Martinez incorrectly construes his murder sentence as a prior, rather than current, offense. "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). This applies to Martinez's foreign sentence. Further:

> Any sentence for an offense against the United States, imposed while the transferred offender is serving the sentence of imprisonment imposed in a foreign country, shall be aggregated with the foreign sentence, in the same manner as if the foreign sentence was one imposed by a United States district court for an offense against the United States.

*Id.* § 4105(c)(4).

Thus, when determining a prisoner's eligibility under the First Step Act, the BOP must consider all of a prisoner's consecutive sentences. If a prisoner is serving multiple, consecutive sentences, and one such offense is among the FSA's enumerated disqualifying offenses, as is the case here, then the prisoner is ineligible to earn FSA time credits. *See e.g., Goodman v. Sage*, No. 4:22-CV-00981, 2022 WL 18028148, at *3 (M.D. Pa. Dec. 30, 2022) (rejecting argument that consecutive sentences "should be treated in a bifurcated manner for FSA eligibility purposes" and concluding that petitioner was ineligible to receive FSA time credits because he was serving a concurrent sentence for a disqualifying offense "as part of his 'single, aggregate term of imprisonment'"); *Sok v. Eischen*, No. 22-CV-458, 2022 WL 17156797, at *6 (D. Minn. Oct. 26, 2022) ("The BOP's aggregation of Petitioner's sentences is not only a

reasonable interpretation of § 3632(d)(4)(D), but said aggregation is, in fact, required").

Accordingly, the BOP properly considered Martinez's consecutive sentences as if they were a single, aggregate term of imprisonment when determining him ineligible to earn FSA time credits. As Martinez acknowledges, Dkt. 8, at 2, he was sentenced to serve 87 months in custody, to run consecutively with his existing murder sentence, for possession with intent to distribute in excess of 5 kilograms of cocaine. Because his consecutive sentences include a disqualifying sentence for murder, along with his other convictions, he cannot earn FSA credits.

According to Martinez, under the statute, only a prior "Federal or State" offense renders him ineligible to earn time credits under 18 U.S.C. § 3632(d)(4)(D)(li). Dkt. 8, at 3. Martinez asserts his murder conviction is a foreign sentence and thus not disqualified from FSA credit. Dkt. 8, at 3. While Section 3632(d)(4)(D)(li), indeed applies to "Federal or State" murder offenses, Section 3632(d)(4)(D)(xxv) applies to "Any section of Chapter 51, relating to homicide" which includes Section 1111 "murder." Martinez's foreign murder renders him ineligible pursuant to Section 3632(d)(4)(D)(xxv). This argument fails.

For administrative purposes, Martinez's murder sentence and possession-with-intent-to-distribute sentence are treated as a single, aggregate term of imprisonment. Thus, because Martinez is serving a sentence for a disqualifying offense—first degree murder—Martinez is ineligible to earn credits under the Act.

## III. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Rosalez's Motion to Dismiss, Dkt. 9, and **DENY** Martinez's Petitions for Writ of Habeas Corpus under 28 U.S.C. § 2241, Dkt. 1 and Dkt. 8. The referral in this case is **CANCELED**.

## IV. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 10, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE